**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROL KNOCH, individually and on behalf of all others similarly situated, | ) ) ) | No. 15-cv-3560 |
| Plaintiff, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| INTUIT, INC., | ) ) | |
| Defendant. | ) ) | |

<u>**CLASS ACTION COMPLAINT**</u>

Joseph J. Siprut
*jsiprut@siprut.com*
Michael L. Silverman
*msilverman@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
<u>**www.siprut.com**</u>

*Counsel for Plaintiff*
*And the Proposed Class*

*[Additional Counsel listed on signature page]*

Plaintiff Carol Knoch ("Plaintiff"), by her attorneys, brings this action against Defendant Intuit, Inc. ("Defendant" or "Intuit"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I.       NATURE OF THE ACTION

1.       Intuit is an American software company that develops financial and tax preparation software and related services for small businesses, accountants and individuals, including the popular TurboTax software.  Tens of millions of American taxpayers use TurboTax to file their federal and state tax returns each year.

2.       In order to use TurboTax to file their returns, either through its website or installed directly on the customer's personal computer, customers are required to enter their most sensitive personal and financial information into TurboTax.

3.       One of the primary benefits of using TurboTax is the ability to electronically file tax returns, resulting not only in convenience at the time of filing but in the faster processing of refunds for electronic filings compared to hard copy filings.  Based on information and belief, Defendant is a participant in the IRS e-file program.

4.       After a customer submits his or her tax return for electronic filing through the TurboTax program, the return is forwarded to Intuit's Electronic Filing Center where Intuit converts it to a standard format and transmits it to the applicable federal and/or state authority.

5.       In connection with e-filing for customers, Intuit is required to obtain and transmit the IP address of the computer from which the return originated.

6.     Another TurboTax benefit is the Refund Processing Service, through which the customer provides Intuit his or her bank account information and TurboTax facilitates, through a third-party, the direct deposit of the customer's tax refund. Fees incurred in e-filing are taken directly from the customer's bank account at the time of the refund.

7.     The data collected and stored by tax preparation software and websites like TurboTax includes a person's most highly sensitive personal and financial information. Accordingly, because Intuit requires TurboTax customers to entrust their most sensitive personal information to it, it in turn has a duty to maintain and protect that data from compromise, theft, and fraud.

8.     One of the primary risks of compromise, theft, and fraud in this context is the filing of a fraudulent tax return. The Internal Revenue Service considers a "fraudulent return" to include a return in which the individual is attempting to file using someone else's name or Social Security number. As such, Intuit owes a duty not only to customers but to non-customers who will be foreseeably damaged should adequate safeguards not be imposed and one of TurboTax's customers files a fraudulent return using that non-customer's name and Social Security number. This duty is even more critical in light of the myriad recent crises in data theft and tax fraud.

9.     Plaintiff, a TurboTax customer for more than a decade, saw this risk actualized when an unknown third party utilized Plaintiff's name, social security number, and address to file a fraudulent tax return through TurboTax, causing Plaintiff injury and resulting in compensable damages.

10.     Plaintiff therefore brings this class action arising from Defendant's failure, despite its knowledge of the sudden increase in fraudulent tax filings and massive data breaches in recent

years, to take commercially reasonable measures to protect identity theft victims by preventing cybercriminals from filing fraudulent tax returns in the victims' names.

11.     On information and belief, Plaintiff alleges that TurboTax facilitated this third party tax fraud by failing to take necessary precautions in safeguarding its customer's most personal and sensitive information.  Plaintiff alleges that Defendant's negligent mishandling of fraudulent tax filings facilitated the theft of billions of tax dollars by cybercriminals by allowing thousands of fraudulent tax returns to be filed through use of its software.  Further, Plaintiffs and the Classes reasonably expected that TurboTax would implement the security measures necessary to safeguard its customers' most personal and sensitive information from theft and fraud and implement security measures to protect third party non-customers from fraudulent returns being filed.

12.     Accordingly, Plaintiff, on behalf of herself and others similarly situated, alleges that through its conduct Defendant violated California's Unfair Competition Law and California's Customer Records Act, as well as the Illinois Consumer Fraud and Deceptive Business Practices Act.  Plaintiff further asserts causes of action for negligence and breach of contract.  Plaintiff and the Class seek damages, declaratory relief, restitution, injunctive relief and any other relief the Court deems just.

## II.     PARTIES

13.     Plaintiff Carol Knoch, a resident of Joliet, Illinois and citizen of the State of Illinois, has been a TurboTax customer for twelve years.  In March 2015, Plaintiff learned that an unknown third-party had filed a fraudulent tax return in her name using information taken from her 2013 federal tax return, which Plaintiff had filed electronically via TurboTax.

14.     Intuit is a Delaware corporation with its principal place of business in Mountain View, California.  Intuit owns, manufactures, and develops the TurboTax software at issue in this case.

## III.     JURISDICTION AND VENUE

15.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than Intuit's State of citizenship.

16.     This Court has personal jurisdiction over Intuit because it has such minimum contacts with California to make this Court's exercise of jurisdiction proper. Intuit engages in continuous and systematic business operations within this State and this District.  Intuit is authorized to do business in Illinois and has specifically marketed and sold its products, including TurboTax, in Illinois, including within this District.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and is thus deemed to be a citizen of this District.  Additionally, a substantial part of the events and/or omissions giving rise to the claims occurred within this District.

## IV.     FACTUAL ALLEGATIONS

***TurboTax and Identity Theft Tax Fraud***

18.     In 2014, the Federal Trade Commission ("FTC") received more than 300,000 consumer complaints reporting identity theft. The largest portion of these identity theft complaints were specifically related to tax fraud.  E-filing has only exacerbated the problem of identity theft

tax and refund fraud, with IRS data revealing nearly two million suspected incidents of electronic tax fraud in 2013.

19.     Identity theft refund fraud occurs when thieves use a taxpayer's identifying information to file a fraudulent tax return and then claim a refund.  On information and belief, Plaintiff alleges that Defendant is well aware of the significant threat of identity theft refund fraud and therefore facilitated such fraud by failing to adequately safeguard Plaintiff's and the Classes' sensitive personal and financial information and by allowing cyber thieves to create bogus TurboTax accounts to file fraudulent tax filings in the names of third party non-customers. Intuit's security failures are particularly concerning given the string of well-publicized data breaches occurring, *inter alia*, at Target, Michaels, Neiman Marcus, Jimmy Johns, Home Depot, P.F. Chang's, Uber, Anthem, and Kmart.  Intuit knew or should have known of the substantial risk of identity theft refund fraud and taken steps to protect against it.

20.     Indeed, in early February 2015 Intuit announced that it had heard from a "small handful of states" regarding an increase in suspicious tax filings. As a result, Intuit was forced to halt TurboTax's transmission of state e-filing tax returns for approximately 24 hours on February 5, 2015.

21.     Shortly thereafter, a total of 19 states revealed that they had identified potential fraud issues with TurboTax filers.  Alabama tax officials reported identifying as many as 16,000 suspicious tax returns through TurboTax.  Minnesota tax officials stopped accepting individual tax returns transmitted through TurboTax, and Massachusetts and Vermont officials announced that they had temporarily suspended tax refunds.  According to officials in Utah, all of the tax returns identified as possibly fraudulent had been filed through TurboTax.

22.     As a result, on February 13, 2015, TurboTax began implementing a two-step authentication process for filers, a security measure email and social media companies had been employing for years.  In March 2015, Intuit announced that it had received inquiries from the U.S. Department of Justice and the Federal Trade Commission regarding the sudden surge in fraudulent filings submitted through TurboTax.

23.     At least two former Intuit employees have stepped forward to confirm that Intuit failed to utilize adequate security measures to protect TurboTax customers because of its concern over the bottom line.  The first, a former security business partner at Intuit's consumer tax group named Robert Lee, alleged that he and his team had developed a fraud model that would have assisted Intuit in quickly identifying accounts that were being used by fraudsters to commit massive amounts of identity theft refund fraud.  Mr. Lee stated that Intuit repeatedly refused to adopt basic cyber security policies that would have made it more difficult for fraudsters to use the company's software for tax refund fraud (such as blocking the re-use of the same Social Security number across a number of TurboTax accounts or preventing the same account from filing more than a small number of tax returns).  Mr. Lee further alleged that when he and his team found that millions of TurboTax accounts were used exclusively for filing fraudulent returns, Intuit management expressly forbade Lee's team from either flagging or turning off such TurboTax accounts.

24.     According to Mr. Lee, Intuit was once an industry leader in alerting the IRS to suspicious tax filings but eventually scaled back these reports after noticing that the overall number of fraudulent filings reported by the IRS was not decreasing. Mr. Lee alleged that Intuit decided to scale back its reports when it noticed that fraudsters were taking their tax fraud business to TurboTax's competitors, resulting in decreased revenues.

25. The second former employee, a former principal security engineer at Intuit named Shane MacDougall, filed an official whistleblower complaint with the SEC in February 2015 alleging that Intuit systematically prioritized profits over protection when processing fraudulent tax filings. According to Mr. MacDougall's SEC filing, he repeatedly raised issues with Intuit management and executives about trying to solve the problem of ongoing tax fraud, but was continuously rebuffed and told that Intuit could not do anything that would "hurt the numbers."

*Plaintiff's Experience*

26. Plaintiff has been a TurboTax customer for 12 years. During that time, Plaintiff has maintained an account with TurboTax that stores her sensitive personal and financial information.

27. On March 2, 2015, Plaintiff received a refund check from the IRS in the amount of $7,942. Plaintiff had not yet filed her 2014 tax return and does not typically receive any refund from the IRS.

28. On March 3, 2015, Plaintiff contacted TurboTax to inquire about the check. The TurboTax representative with whom she spoke informed Plaintiff that her and her husband's names, addresses, and social security numbers had been lifted from her 2013 tax return, e-filed through TurboTax, and used to file a fraudulent federal tax return in her name. The representative specifically informed Plaintiff that her personal information had been breached through TurboTax, explaining that the cyber thieves had initially attempted to put the refund on a reloadable debit card but had been rejected by the IRS, resulting in the mailing of the physical check to Plaintiff's residence.

29. Following this conversation, Plaintiff filed a police report with the Joliet Police Department reporting the identity theft, contacted three credit bureaus to inform them that her

identity had been stolen, and completed forms with the IRS in an attempt to clear her name. Plaintiff was ultimately forced to paper file her federal and state tax returns. Plaintiff completed her returns through TurboTax but, because she could not e-file the returns, was forced to pay a $100 printing fee out-of-pocket for her paper returns. Plaintiff has not been reimbursed for this necessary expenditure.

## V.    CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action on her own behalf, and on behalf of the following Classes pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Classes consist of each of the following:

> **Tax Fraud National Class:** All individuals and businesses in the United States who had fraudulent tax returns filed in their name through the use of Intuit's TurboTax software.
>
> **Tax Fraud Multi-State Class:** All individuals and businesses in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who had fraudulent tax returns filed in their name through the use of Intuit's TurboTax software.[1]
>
> **Tax Fraud Illinois Subclass:** All individuals and businesses in the State of Illinois who had fraudulent tax returns filed in their name through the use of Intuit's TurboTax software.
>
> **Data Breach National Class:** All individuals and businesses in the United States whose personal financial and identifying information was provided to Intuit through its TurboTax software and subsequently compromised while in Intuit's possession, custody, or control.
>
> **Data Breach Multi-State Class:** All individuals and businesses in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington whose personal financial and identifying information was provided to Intuit through its

---

[1] The States in the Tax Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); (Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

TurboTax software and subsequently compromised while in Intuit's possession, custody, or control.[2]

**Data Breach Illinois Subclass:** All individuals and businesses in the State of Illinois whose personal financial and identifying information was provided to Intuit through its TurboTax software and subsequently compromised while in Intuit's possession, custody, or control.

Excluded from the Classes are Defendant and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definitions after conducting discovery.

31.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

32.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the millions. The precise number of members of the Classes and their addresses are presently unknown to Plaintiff, but may be ascertained from Intuit's books and records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

33.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include:

---

[2] The States in the Data Breach Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois  (815 Ill. Comp. Stat. 502/1, *et seq.*); (Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich.  Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67,  *et seq.*); Missouri (Mo. Rev. Stat.  010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

a. Whether Intuit failed to use reasonable care and commercially reasonable methods to secure and safeguard customers' and non-customers' sensitive personal identifying information;

b. Whether Intuit properly implemented its purported security measures to protect customer non-customer personal identifying information from unauthorized capture, dissemination, and misuse;

c. Whether Intuit's conduct violates the California Records Act and/or Unfair Competition Laws;

d. Whether Intuit's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act (and the other consumer fraud statutes asserted on behalf of the Multi-State Classes);

e. Whether Intuit's conduct constitutes a breach of contract; and

f. Whether Plaintiff and the other members of the Classes are entitled to damages, injunctive relief, or other equitable relief.

34. Intuit engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

35. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes were comparably injured through Intuit's uniform misconduct described

above and were thus all subject to the acts or omissions alleged herein. Further, there are no defenses available to Intuit that are unique to Plaintiff.

36.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the other members of the Classes she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

37.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Intuit, so it would be impracticable for members of the Classes to individually seek redress for Intuit's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     VIOLATIONS ALLEGED

### COUNT I
### VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT
(CAL. CIV. CODE § 1798.80, *et seq.*)
**(On Behalf of the Tax Fraud National Class and the Data Breach National Class –
collectively the "Class" for purposes of Count I)**

38.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-37 of this Complaint as though set forth fully herein.

39.     Intuit is a "business" as that term is defined in Cal. Civ. Code § 1798.80(a).

40.     Plaintiff and the Class members are "individual[s]" as that term is defined in Cal. Civ. Code § 1798.80(d).

41.     Plaintiff and the Class members had "personal information" compromised as a result of Intuit's acts or omissions alleged herein, as that term is used in both Cal. Civ. Code 1798.80(e) and 1798.81.5(d)(1)(C).

42.     Unauthorized, third-party access to Plaintiff's and the Class members' personal information constitutes a "breach of the security system" pursuant to Cal. Civ. Code § 1798.82(g).

43.     Intuit's policies and procedures regarding data protection and retention violated Cal. Civ. Code § 1798.81.5, as Intuit's measures were unreasonable and wholly failed to prevent access to, and disclosure of, customers' and non-customers' personal information.

44.     Intuit also violated Cal. Civ. Code § 1798.82 by failing to notify Plaintiff and the Class members that their personal, confidential, and highly sensitive information had been compromised and/or stolen by hackers.

45.     As a result of Intuit's conduct as described herein, Plaintiff and the Class members have been injured.

46.     Defendant's conduct alleged herein occurred primarily and substantially in the State of California, where Intuit is headquartered and maintains its principal place of business.

47.     Plaintiff seeks monetary damages, including damages related to the acquisition of identity theft and credit monitoring services, injunctive and declaratory relief pursuant to Cal. Civ. Code § 1798.84(e), and attorneys' fees and costs.

<u>COUNT II</u>
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.***
**(On Behalf of the Tax Fraud National Class and the Data Breach National Class –
collectively the "Class" for purposes of Count II)**

48.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-37 of this Complaint as though set forth fully herein.

49.     California Business & Professions Code § 17200, *et seq*. prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including any "any unlawful, unfair or fraudulent business act or practice . . . ."

50.     Intuit's conduct constitutes unlawful and unfair practices because it violates California Civil Code §§ 1798.81.5 and 1798.82, and other additional federal and state statutes and regulations, and constitutes actionable negligence.

51.     Intuit's conduct was unlawful as it failed to design, implement, and maintain reasonable security measures in protecting the personal, confidential, and highly sensitive data of customers and non-customers, as well as by failing to timely notify Plaintiff and the Class that their information had been compromised.

52.     Plaintiff and the Class members have suffered injuries as a direct and proximate result of Intuit's acts as alleged herein.  Plaintiff and the Class have suffered damages that include out-of-pocket expenditures required to paper file their tax returns as well as the time

invested by Plaintiff and the Class in protecting themselves from identity theft and other fraud as a result of Intuit's breaches (by, *inter alia*, filing police reports, purchasing or enrolling in credit monitoring services, and filing affidavits or other paperwork attempting to prove their true identity to the IRS), in addition to the risk of future identity theft and fraudulent activity.

53.     Defendant's conduct alleged herein occurred primarily and substantially in the State of California, where Intuit is headquartered and maintains its principal place of business

54.     Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, and all other relief allowed under Cal. Bus. & Prof. Code § 17200.

**COUNT III**
**BREACH OF CONTRACT**
**(On Behalf of the Tax Fraud National Class and the Data Breach National Class –**
**collectively the "Class" for purposes of Count III)**

55.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-37 above as if fully set forth herein.

56.     Defendant entered into written contracts with Plaintiffs and the Class in which it agreed to:  (1) impose a limit of three state e-files per every one federal return; and (2) protect the data provided it to by the customer.

57.     Additionally, as part of its written agreement with Plaintiffs and the Class, Intuit stated, "We want you to feel comfortable and confident when using our products and services and with entrusting your personal and tax return information with us." However, as Defendant's conduct described above illustrates, Defendant failed to act in accordance with this express contractual term as t continuously facilitated third party tax fraud to be committed without flagging such filings to the IRS or state tax agencies. In doing so, Defendant placed its own profits above the security of its customers' most sensitive personal and financial information.

58.     There is an implied covenant of good faith and fair dealing regarding contractual obligations Intuit made to its customers who had entered contracts with it, that their data would be secure and that Intuit would take reasonable and good faith measures to protect customers from cyber thieves using TurboTax to file fraudulent tax returns in the names of its customers.

59.     Defendant breached its express and implied contractual obligations by failing to safeguard the personal and financial information of Plaintiff and the Class; by failing to prevent the fraudulent filing of tax returns; and by failing to timely notify customers that their personal and financial information had been compromised by cyber thieves.

60.     As a direct and proximate result  of Intuit's breach of express terms and implied covenants of the contract, Plaintiff and the Class members have been injured and damaged in an amount to be proven at trial, which shall include, but is not limited to all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT IV
## VIOLATION OF STATE CONSUMER FRAUD ACTS
**(On Behalf of the Tax Fraud Multi-State Class and the Data Breach Multi-State Class – collectively the "Class" for purposes of Count IV)**

61.     Plaintiff incorporates the allegations contained in paragraphs 1-37 above as if fully set forth herein.

62.     Plaintiff and the other members of the Class were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their sensitive personal and financial information.

63.     Intuit intended for Plaintiff and the other members of the Class to rely on Intuit to protect the information furnished to it in connection with the filing of their tax returns via TurboTax, in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

64. Intuit instead handled Plaintiff's and the other Class members' personal information in such manner that it was compromised.

65. Intuit failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

66. It was foreseeable that Defendant's willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

67. Intuit benefited from mishandling its customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Intuit saved on the cost of those security measures.

68. Defendant's fraudulent and deceptive acts and omissions were intended to induce Plaintiff's and the other Class members' reliance on Defendant's deception that their financial information was secure and protected.

69. Intuit violated 815 ILCS 505/2, and the additional consumer fraud statutes asserted on behalf of the Class,[3] by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff's and the other Class members' private financial information, by failing to warn them that their information was at risk, and by failing to discover and immediately notify affected customers of the nature and extent of the security failures.

70. Defendant's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

---

[3] See *supra* footnotes 1 and 2.

71.    Defendant's conduct constitutes unfair acts or practices as defined in that statute because Intuit caused substantial injury to Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

72.    In addition, Intuit also engaged in an unlawful practice by failing to comply with 815 ILCS 530/10(a), and the additional consumer fraud statutes asserted on behalf of the Class. Section 530/10(a) provides:

> Sec. 10. Notice of Breach. (a) Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most expedient time possible and without unreasonable delay, consistent with any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system

73.    815 ILCS 530/20 provides that a violation of 815 ILCS 530/10 "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act."

74.    Plaintiff and the other Class members have suffered injury in fact and actual damages including lost money and property as a result of Defendant's violations of 815 ILCS 505/2, and the additional consumer fraud statutes asserted on behalf of the Class.

75.    Plaintiff's and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

<u>COUNT V</u>
## VIOLATION OF ILLINOIS CONSUMER FRAUD ACT
### (815 ILCS 505/1 *ET SEQ.*)
**(In the Alternative to Count IV, and on Behalf of the Tax Fraud Illinois Class and the Data Breach Illinois Class – collectively the "Class" for purposes of Count V)**

76.     Plaintiff incorporates the allegations contained in paragraphs 1-37 above as if fully set forth herein.

77.     Plaintiff and the other members of the Class were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their sensitive personal and financial information.

78.     Intuit intended for Plaintiff and the other members of the Class to rely on Intuit to protect the information furnished to it in connection with the filing of their tax returns via TurboTax, in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

79.     Intuit instead handled Plaintiff's and the other Class members' personal information in such manner that it was compromised.

80.     Intuit failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

81.     It was foreseeable that Defendant's willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

82.     Intuit benefited from mishandling its customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Intuit saved on the cost of those security measures.

83.     Defendant's fraudulent and deceptive acts and omissions were intended to induce Plaintiff's and the other Class members' reliance on Defendant's deception that their financial information was secure and protected.

84.     Intuit violated 815 ILCS 505/2 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff's and the other Class members' private financial information, by failing to warn them that their information was at risk, and by failing to discover and immediately notify affected customers of the nature and extent of the security failures.

85.     Defendant's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

86.     Defendant's conduct constitutes unfair acts or practices as defined in that statute because Intuit caused substantial injury to Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

87.     In addition, Intuit also engaged in an unlawful practice by failing to comply with 815 ILCS 530/10(a), which provides:

> Sec. 10. Notice of Breach. (a) Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most expedient time possible and without unreasonable delay, consistent with any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system

88.     815 ILCS 530/20 provides that a violation of 815 ILCS 530/10 "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act."

89.     Plaintiff and the other Class members have suffered injury in fact and actual damages including lost money and property as a result of Defendant's violations of 815 ILCS 505/2.

90.     Plaintiff's and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate

## VII.     DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues so triable.

## VIII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Classes, respectfully requests that this Court:

A.     Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above.

B.     Appoint Plaintiff as the representative of the Class and her counsel as Class Counsel.

C.     Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled.

D.     Award pre-judgment and post-judgment interest on such monetary relief.

E.     Grant appropriate injunctive and/or declaratory relief.

F.     Award reasonable attorneys' fees and costs.

G.     Grant such further relief that this Court deems appropriate.

Dated: April 24, 2015                    Respectfully submitted,


                                         By: */s/ Joseph Siprut*

                                         Joseph J. Siprut
                                         *jsiprut@siprut.com*
                                         Michael L. Silverman
                                         *msilverman@siprut.com*
                                         **SIPRUT PC**
                                         17 N. State Street
                                         Suite 1600
                                         Chicago, Illinois 60602
                                         312.236.0000
                                         **www.siprut.com**


                                         Katrina Carroll
                                         *kcarroll@litedepalma.com*
                                         Kyle Chandler
                                         *kchandler@siprut.com*
                                         **LITE DEPALMA GREENBERG, LLC**
                                         Chicago Office
                                         One South Dearborn
                                         Suite 2100
                                         Chicago, Illinois 60603
                                         312.739.4200

                                         Tina Wolfson
                                         *twolfson@ahdootwolfson.com*
                                         Ted Maya
                                         *tmaya@ ahdootwolfson.com*
                                         **AHDOOT & WOLFSON, P.C.**
                                         1016 Palm Avenue
                                         West Hollywood, CA 90069
                                         310.474.9111

                                         Jasper Ward
                                         *jasper@jonesward.com*
                                         **JONES WARD PLC**
                                         312 S. Fourth St 6th Floor
                                         Louisville, KY 40202
                                         502.882.6000

Paul C. Whalen
*pcwhalen@gmail.com*
**LAW OFFICES OF PAUL WHALEN, P.C.**
768 Plandome Road
Manhasset, NY 11030
516.627.5610

Ariana J. Tadler
atadler@milberg.com
**MILBERG LLP**
One Pennsylvania Plaza
49th Floor
New York, NY 10119
212.946.9453


***Counsel for Plaintiff***
***And the Proposed Class***

4847-5304-9379, v. 1